# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.:

JEFFREY HULSE;
KELLY MCCAIN; and
T.H., a minor, by and through his father, Jeffrey Hulse,

     Plaintiffs,

v.

ADAMS COUNTY, COLORADO;
MICHEL MILLER, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
CHRISTOPHER GRUENBERGER, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
DAVID LEHRKE, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
JEFFREY STOVAL, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
JAI ROGERS, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
DEREK DUMMAR, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
SCOTT MILLER, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
PAUL SISKA, Officer in the Adams County Sheriff's Office, in his individual and official capacity;
DILLON LUSSIER, Officer in the Adams County Sheriff's Office, in his individual and official capacity; and
DOUGLAS N. DARR, Adams County Sheriff, in his individual and official capacity,

     Defendants.

---

## PLAINTIFFS' COMPLAINT AND JURY DEMAND

---

Plaintiffs, JEFFREY HULSE, KELLY MCCAIN, and T.H.,[1] by and through counsel, Darold W. Killmer and Michael P. Fairhurst of KILLMER, LANE & NEWMAN, LLP, respectfully allege for their Complaint and Jury Demand as follows:

## I. INTRODUCTION

1. Under the Fourth Amendment to the United States Constitution, "a man's home is his castle [to the point that t]he poorest man may in his cottage bid defiance to all the forces of the Crown." *Georgia v. Randolph*, 547 U.S. 103, 126 (2006) (alterations in original) (internal quotation marks omitted). "We have … lived our whole national history with an understanding of [that adage]." *Id*.

2. Adams County Sheriff's Office ("ACSO") officers, however, disregarded this and other clearly established law that lies at the core of the Fourth Amendment's protections by arbitrarily storming into Plaintiffs' home – and their bedrooms – during the middle of the night on April 6, 2013, and then dragging Plaintiffs Hulse and McCain outside and brutally beating them, despite lacking any circumstances, exigent or otherwise, to justify their patently unreasonable conduct.

3. Plaintiffs therefore bring this action for ACSO's violations of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, and for Adams County's inexcusable failure to discipline or otherwise respond appropriately to ACSO officers' manifestly unlawful actions at Plaintiffs' home during the night of April 6, 2014.

## II. JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States and the State of Colorado, and is brought pursuant to Title 42 U.S.C. § 1983.

---

[1] In order to protect the privacy of Plaintiff T.H., a minor, he will be referred to throughout this Complaint by the initials of his first and last name.

5.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

6.     Jurisdiction supporting Plaintiffs' claims for attorney fees and costs is conferred by 42 U.S.C. § 1988.

7.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

### III.    PARTIES

**Plaintiffs**

8.     Plaintiff Kelly McCain is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

9.     Plaintiff Jeffrey "Jeff" Hulse is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

10.    Plaintiff T.H., a minor, is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado. Plaintiff T.H. is the child of Plaintiff Jeffrey Hulse.

**Sheriff Defendants**

11.    Defendant Adams County, Colorado is responsible for the supervision, training, official polices, customs, and actual practices of the Adams County Sheriff's Office.

12.    Defendant Michel Miller is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant M. Miller[2] was acting under color of state law as an ACSO officer. Upon information and belief,

---

[2] Since there are two named Defendants surnamed Miller, they will be referred to herein as "M. Miller" and "S. Miller."

Defendant M. Miller was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

13. Defendant Christopher Gruenberger is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Gruenberger was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Gruenberger was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

14. Defendant David Lehrke is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Lehrke was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Lehrke was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

15. Defendant Jeffrey Stoval is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Stoval was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Stoval was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

16. Defendant Jai Rogers is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Rogers was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Rogers was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

17. Defendant Derek Dummar is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Dummar was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Dummar was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

18. Defendant Scott Miller is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant S. Miller was acting under color of state law as an ACSO officer. Upon information and belief, Defendant S. Miller was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

19. Defendant Paul Siska is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Siska was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Siska was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

20. Defendant Dillon Lussier is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Lussier was acting under color of state law as an ACSO officer. Upon information and belief, Defendant Lussier was one of the ACSO officers who participated in the unlawful searches and seizures described herein.

21. Defendant Douglas N. Darr is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against him, Defendant Darr was acting under color of state law as the Adams County Sheriff. Defendant Darr is

responsible for the supervision, training, official polices, customs, and actual practices of agents of the Adams County Sherriff's Office.

## IV.   FACTUAL ALLEGATIONS

### The 3:30 a.m. Incidents

22.   At approximately 3:30 a.m. on April 6, 2013, Jeff Hulse, Ms. McCain, and Jeff Hulse's son, T.H., were soundly sleeping in their home located at 2041 W. 74th Ave. in Denver when Ms. McCain suddenly awoke to loud banging at her front door.

23.   Startled and scared, Ms. McCain leapt out of bed, threw on a bathrobe, and answered the front door by cracking it open a few inches.

24.   To Ms. McCain's great surprise, Adams County Sheriff's Deputies were standing on her porch, including, but not limited to, Defendants Jeffrey Stoval, Christopher Gruenberger and David Lehrke.

25.   However, none of the officers identified themselves as law enforcement.

26.   Instead, Defendant Stoval asked Ms. McCain if anybody had been shooting in her yard.

27.   ACSO officers had been dispatched to Mr. Hulse and Ms. McCain's residence because two individuals from a neighboring house had called 911, falsely reporting that Mr. Hulse was firing a ".357" revolver into the air and at animals from Mr. Hulse's and Ms. McCain's yard. The callers also stated that the shooter's wife or girlfriend was trying to get the shooter back into the house.

28.   Bewildered by the presence of ACSO deputies, Ms. McCain replied that she had been in bed sleeping and had no idea what Defendant Stoval was referencing.

29. Defendant Stoval nonetheless asked Ms. McCain if he and other officers could come inside her home.

30. Ms. McCain unequivocally replied "no."

31. Immediately thereafter, Defendant M. Miller (the commanding Sergeant) instructed the ACSO deputies on scene, including, but not limited to, Defendants Derek Dummar, Jai Rogers, Scott Miller, Paul Siska, Stoval, Gruenberger and Lehrke, to enter the home of Ms. McCain and Mr. Hulse.

32. Despite having no search warrant or Ms. McCain's consent, or any other legal basis to enter the home, Defendant Stroval pushed Ms. McCain to the side, and he and several other ACSO officers entered her home with their guns drawn, and proceeded to search the entire house.

33. There were no exigent circumstances that could have justified the deputies' warrantless search of Plaintiffs' home.

34. During their search, gun-wielding ACSO deputies burst in Plaintiff T.H.'s bedroom, where he had been sleeping, flipped on the lights, and commanded him to stay in his room.

35. Terrified, T.H. complied with the command.

36. ACSO deputies then twice returned to T.H.'s room during their search of Plaintiffs' home to demand that he tell them where the revolver was located.

37. During their intrusive, protracted, and manifestly unreasonable search of Plaintiffs' home, the deputies entered the master bedroom, where they observed Mr. Hulse sleeping, and flipped on the lights.

38. Mr. Hulse awoke to an ACSO deputy holding a gun to his head, who, without identifying himself, commanded, "Put your hands behind your back, and don't move."

39. Mr. Hulse complied and an officer handcuffed him.

40. The deputies then asked Mr. Hulse if he had been shooting a gun outside in his yard, and inquired where his guns were located.

41. Mr. Hulse told the deputies that he lawfully possessed firearms in his home, but had not been shooting any guns earlier that night.

42. The deputies persisted in interrogating Mr. Hulse (without advising him of his *Miranda* rights) and threatened to subject him to a gunshot residue test.

43. Mr. Hulse agreed to the test, but the deputies never administered it.

44. Understandably confused by the presence of police deputies in his home in the middle of the night, Mr. Hulse also repeatedly questioned the deputies about why they were in his house.

45. Meanwhile, ACSO deputies aggressively and very roughly pulled Ms. McCain from the interior threshold of her front door to the middle of her front yard and then, upon information and belief, Defendant Gruenberger kneed her in the middle of her back, and a deputy (or deputies) forcefully handcuffed her – all without any conceivable justification, and without advising her of her *Miranda* rights. One neighbor reported that the ACSO deputies deployed a stun taser on Ms. McCain.

46. Ms. McCain's bathrobe also came undone during this needlessly violent episode, leaving the front side of her body naked and publicly exposed.

47. When deputies forced Ms. McCain back up to her feet, her largely unclothed body was thus on vivid display to all the deputies outside and her next-door neighbors who were

watching the events from inside their home (and who had reported to a 911 operator that ACSO deputies tasered Ms. McCain).

48. Ms. McCain, who was terrified, suffered the additional indignity of soiling herself as a result of the deputies' brutal conduct towards her.

49. ACSO deputies nonetheless paraded Ms. McCain in handcuffs around her yard and onto her neighbor's property without giving her a chance to clean herself, and with the naked front side of her body still visible.

50. Because of ACSO deputies' excessive use of force against Ms. McCain, she sustained significant physical and other injuries, including, but not limited to, deep bruises on her back, left shoulder, and hand, and ongoing, severe neck and back pain and limited range of motion in her left shoulder, in addition to significant emotional and mental pain, stress, humiliation, and loss of dignity and privacy.

51. Ms. McCain was not charged with any criminal offense for her conduct on April 6, 2013.

52. However, ACSO Detective Michael Ostrander revoked Ms. McCain's carry concealed hand gun permit because of the incidents of April 6.

53. ACSO deputies also did not locate any spent shell casings on Plaintiffs' property despite conducting (warrantless) searches of the interior of their home and the inside of Mr. Hulse's vehicle, along with Plaintiffs' yard.

54. The deputies left Plaintiffs' home (for the first time) at approximately 4:15 a.m.

55. The events that occurred at Plaintiffs' home between approximately 3:30 a.m. and 4:15 a.m. on April 6, 2013, summarized above, will be referred to herein as the "3:30 a.m. Incidents."

### The 4:45 a.m. Incidents

56. At approximately 4:45 a.m. on April 6, 2013, Plaintiffs were still awake and talking in the kitchen, severely shaken from their recent encounter with ACSO deputies, when they heard tapping on windows around their home.

57. Ms. McCain went into her living room, where she observed a man with a gun in their driveway through the window, and told Mr. Hulse. She then stood on her couch, opened the window, and asked the man outside what he was doing. It was still dark outside, as sunrise had not arrived.

58. Meanwhile, Mr. Hulse instructed T.H. to call 911 while he went to retrieve a pistol, thinking that burglars had surrounded the house and were trying to break in.

59. He was concerned for the safety of himself and his family.

60. T.H. and Ms. McCain were also terrified by the presence of unidentified strangers outside their home tapping their windows in the middle of the night.

61. Mr. Hulse entered his living room with a pistol in hand and stepped up to the window alongside Ms. McCain, where he observed the armed gunman outside pointing a gun at Ms. McCain and him.

62. The gunman shouted at Mr. Hulse to "drop the gun!" and Mr. Hulse responded "drop your gun!" The gunman demanded "drop your gun now!," at which point Ms. McCain asked "Are you the police?"

63. Only then did the gunman identify himself as a police deputy.

64. Mr. Hulse immediately lowered his weapon, stepped out of the window, and placed the weapon back in his bedroom.

65. Prior to this moment, Mr. Hulse had no way to know that police deputies were outside his home.

66. Mr. Hulse reasonably assumed that real deputies who would be on his property would have made their presence known by knocking on his door and immediately identifying themselves, not tapping on his windows from the yard and then pointing a gun (or guns) at Ms. McCain and him.

67. Additionally, while Mr. Hulse could see that an individual standing outside his window was pointing a firearm at Ms. McCain and him, it was not apparent that he was wearing an official uniform.

68. Consequently, Mr. Hulse pointed his pistol through the living room window to try to scare away the people outside who he logically perceived to be dangerous criminals.

69. Upon information and belief, and based on facts discovered subsequent to the standoff described above, ACSO deputies including, but not limited to, Defendants Dillon Lussier, Dummar, Rogers, S. Miller, Siska, Stoval, Gruenberger and Lehrke were dispatched to Mr. Hulse's and Ms. McCain's home following the 3:30 a.m. Incidents in response to another baseless 911 call from the same next-door neighbors who earlier reported that a firearm had been discharged on Ms. McCain and Mr. Hulse's yard. This time, the neighbor falsely reported that Mr. Hulse had recently caused a verbal disturbance outside his home.

70. After Mr. Hulse deposited his weapon in his bedroom, he went to the front door and opened the metal security door with his left hand while putting his right hand in the air.

71. Even though both Mr. Hulse's empty hands were visible to at least some of the ACSO deputies on scene, an ASCO deputy came onto Mr. Hulse's unenclosed front porch,

11

reached across the threshold into the house, and physically jerked him outside from the interior of his home.

72. Thereafter, ACSO deputies repeatedly punched Mr. Hulse in the torso and slammed his body to the ground, cracking his ribs, injuring his neck and shoulder, and causing several deep bruises (among other physical and non-physical injuries).

73. After handcuffing Mr. Hulse on the ground, deputies pulled him back onto his feet and led him to a patrol car, where, upon information and belief, Defendant Lehrke smashed Mr. Hulse's head into the car several times while he was restrained by handcuffs, resulting in significant injuries, including a broken front tooth.

74. Once again, the deputies failed to advise Mr. Hulse of his *Miranda* rights when arresting him. ACSO ultimately transported Mr. Hulse to the Adams County Detention Facility despite lacking an arrest warrant, or probable cause to believe that he had violated any laws.

75. Upon information and belief, Defendant Rogers was Mr. Hulse's arresting officer.

76. While Mr. Hulse was beaten and arrested outside his home, Ms. McCain remained in her living room.

77. During this time, ACSO deputies entered her home without her consent or a search warrant, or any other legal justification, commanded her not to leave the room, and pointed their guns at her even though she was clearly unarmed, and presented no danger or threat to them.

78. ACSO officers then paraded through Plaintiffs' home with their guns drawn, during which time an officer flipped the light on in T.H.'s room, where he was lying in bed, commanded T.H. not to leave the room, and closed the door.

79. Terrified, T.H. complied with the officers' command.

80.     Thereafter, deputies harassed, intimidated, and coerced Ms. McCain in an attempt to force her to provide false statements against Mr. Hulse, and without advising her of her *Miranda* rights. Deputies eventually left her home at approximately 5:30 a.m. that morning.

81.     The events that occurred at Plaintiffs' home between approximately 4:45 a.m. and 5:30 a.m. on April 6, 2013, summarized above, will be referred to herein as the "4:45 a.m. Incidents."

82.     ACSO Detective Mark Michieli prepared the probable cause affidavit to support Mr. Hulse's warrantless – and baseless – arrest.

83.     In so doing, Michieli conspired and acted in concert with the other ACSO deputies who were present at Mr. Hulse's and McCain's home on April 6, 2013 to falsely accuse Mr. Hulse and Ms. McCain of engaging in wrongful conduct on that night which they clearly did not commit, and to deliberately omit and distort the facts relating to the ACSO's conduct towards Mr. Hulse and McCain, in an effort to cover up ACSO's violations of Mr. Hulse's, Ms. McCain's, and T.H.'s clearly-established constitutional rights.

84.     Adams County's abuse of Mr. Hulse continued even after he was taken to jail. While awaiting his release on bond, Mr. Hulse repeatedly asked deputies on site and jail staff for medical attention to address the injuries he sustained from ACSO deputies' excessive use of force against him earlier that night. All his requests were denied.

85.     As a result of the ACSO's deliberately false representations of Mr. Hulse's conduct on April 6, 2013, he was charged with two counts of Assault on a Peace Officer in the First Degree (18-3-202(1)(e), C.R.S.), two counts of felony Menacing (18-3-206(1)(a)/(b), C.R.S.) and two counts of Harassment (18-9-111(1)(h), C.R.S.).

86. Mr. Hulse had no choice but to retain and pay for the services of a criminal attorney to defend himself against Defendants' and the State's meritless charges.

87. Subsequently, Mr. Hulse reluctantly accepted a plea deal from the State, and pled guilty to two counts of prohibited use of a firearm.

88. Mr. Hulse entered into this deal despite having never committed this or any other criminal offense on April 6, 2013 because he rationally concluded that the slight possibility of a jury convicting him of a felony (or felonies), notwithstanding his innocence, was too serious a risk to take.

89. Upon information and belief, Defendant Adams County and Defendant Darr has failed to properly hire, train, supervise, and/or discipline any of its subordinate employees and agents who participated in the aforementioned events of April 6, 2013, despite the obvious need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions, and the fact that its current custom, policies, or practices with respect to hiring, training, supervision, and/or discipline are clearly likely to result in a violation of constitutional rights.

## V.   STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation –**
**Unlawful Search – All Plaintiffs**
(Against All Defendants)

90. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

91. Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

92.     Plaintiffs had protected Fourth Amendment interest against unreasonable governmental intrusion into their home.

93.     Mr. Hulse had a protected Fourth Amendment interest against unreasonable governmental intrusion into his vehicle parked on his property.

94.     Defendants, acting in concert with one another, twice entered and searched Plaintiffs' home unlawfully.

95.     Defendants, acting in concert with one another, also unlawfully entered and searched Mr. Hulse's vehicle.

96.     No Defendant had a warrant authorizing any such search of Plaintiffs' home or Mr. Hulse's vehicle.

97.     Plaintiffs never consented to any of the searches of their home, and Mr. Hulse never consented to the search of his vehicle.

98.     No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendants' conduct.

99.     Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

100.    Defendants engaged in these actions intentionally, willfully, and wantonly.

101.    Defendant Adams County and Defendant Darr failed to properly hire, train, supervise and/or discipline its employees regarding the proper basis for engaging in a search of a residence or vehicle, which contributed to the improper and unwanted searches of Plaintiffs' home and Mr. Hulse's vehicle.

102. This inadequate hiring, training, supervision, and or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Adams County and Defendant Darr.

103. In light of the duties and responsibilities of Defendant Adams County personnel – who must make decisions regarding when Fourth Amendment searches are appropriate – the need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Adams County is liable for its failure to properly hire, train, supervise, and/or discipline its subordinate employees and agents.

104. Such failure to properly hire, train and supervise was the moving force behind and proximate cause of Defendants' unreasonable search of Plaintiffs' home and Mr. Hulse's vehicle, and constitutes an unconstitutional policy, procedure, custom and/or practice.

105. Plaintiffs have been and continue to be damaged by Defendants' unreasonable searches because such searches caused and causes them severe mental and emotional distress,

106. The acts or omissions of each Defendant, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of Plaintiffs' damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation –**
**Unlawful Seizure and Excessive Force – Plaintiffs Hulse and McCain**
(Against All Defendants)

107. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

108. Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

109. Plaintiffs Hulse and McCain had a protected Fourth Amendment interest against unreasonable governmental seizures of their person, and against excessive force at the hands of law enforcement personnel.

110. No Defendants at any time had a legally-valid basis to seize Ms. McCain's person during either the 3:30 a.m. or 4:45 a.m. Incidents.

111. No Defendants at any time had a legally-valid basis to seize Mr. Hulse's person during the 3:30 a.m. Incidents.

112. Defendants unlawfully seized Ms. McCain by means of excessive physical force during the 3:30 a.m. Incidents and 4:45 a.m. Incidents.

113. Defendants unlawfully seized Mr. Hulse by means of excessive physical force during the 4:45 a.m. Incidents.

114. Defendants had no warrant authorizing any seizure of Mr. Hulse's or Ms. McCain's bodies.

115. No legally-recognizable circumstances, exigent or otherwise, existed which would have justified or permitted Defendants' conduct.

116. Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

117. Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to the constitutionally- protected rights of all three Plaintiffs, and demonstrating a reckless disregard for the federally-protected constitutional rights of Plaintiffs herein.

118. Defendant Adams County and Defendant Darr failed to properly hire, train, supervise, and/or discipline its ACSO employees regarding the proper use of physical restraint and force, resulting in Mr. Hulse's and McCain's unlawful seizures.

119. This inadequate hiring, training, supervision, and/or discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Adams County and Defendant Darr.

120. In light of the duties and responsibilities of Defendant Adams County personnel – who must make decisions regarding when forcible restraint and use of physical force is appropriate – the need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Adams County is liable for its failure to properly hire, train, supervise, and/or discipline its subordinate employees and agents.

121. Such failure to properly hire, train, supervise, and/or discipline was the moving force behind and proximate cause of Defendants' unreasonable seizures of Mr. Hulse and Ms. McCain, and constitutes an unconstitutional policy, procedure, custom, and/or practice of Defendant Adams County.

122. Mr. Hulse and Ms. McCain have been and continue to be damaged by Defendants' unreasonable seizures of them. They have endured and continue to endure severe mental and emotional distress, and were significantly physically injured by Defendants' unlawful seizures.

123.   The acts or omissions of each Defendant described herein, including the unconstitutional policy, procedure, custom and/or practice described herein, were the legal and proximate cause of Mr. Hulse's and Ms. McCain's damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants, and award them all relief as allowed by law and equity, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Issuance of an Order mandating appropriate equitable relief, including but not limited to:

   i. Issuance of a formal written apology from each Defendant to Plaintiffs;

   ii. The imposition of policy changes designed to avoid future similar misconduct by Defendants;

   iii. Mandatory training designed to avoid future similar misconduct by Defendants;

   iv. An explicit prohibition against any retaliation against Plaintiffs;

   v. Imposition of disciplinary action against appropriate employees of the institutional Defendants;

    vi. The appropriate expungement of records;

  f. Pre-judgment and post-judgment interest at the highest lawful rate;

  g. Attorney's fees and costs; and

  h. Such further relief as justice requires.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 12th day of September, 2014.

        KILLMER, LANE & NEWMAN, LLP

        */s/ Darold W. Killmer*
        _____
        Darold W. Killmer
        Michael P. Fairhurst
        1543 Champa St., Ste. 400
        Denver, CO 80202
        Phone: (303) 571-1000
        Facsimile: (303) 571-1001
        dkillmer@kln-law.com
        mnewman@kln-law.com
        mfairhurst@kln-law.com

        ATTORNEYS FOR PLAINTIFFS