IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-02531-RM-NYW

JEFFREY HULSE; *et al.*,

      Plaintiffs,

v

ADAMS COUNTY, COLORADO, *et al.*,

      Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendants' Partial Motion to Dismiss [#12], filed on November 14, 2014 (the "Partial Motion to Dismiss") that was referred to the Magistrate Judge pursuant to the Order of Reference dated September 23, 2014 [#6] and the memorandum dated December 4, 2014 [#16].

      The court has carefully considered the motion and related briefing, the parties' arguments at the February 24, 2015 motions hearing, and the applicable case law. For the following reasons, I respectfully RECOMMEND that:

      (1) Defendants' Partial Motion to Dismiss be GRANTED, on the grounds that Plaintiffs' Complaint [#1] fails to state a viable claim under Section 1983 for municipal or "official capacity" liability as to any Defendant, and fails to state any viable claim as to Defendant Douglas Darr.

## BACKGROUND

Plaintiffs Jeffrey Hulse ("Mr. Hulse"), Kelly McCain ("Ms. McCain") and minor T.H. (collectively, "Plaintiffs") filed their Complaint against ten officers[1] in the Adams County Sheriff's Office on September 12, 2014, including then Sherriff Douglas Darr ("Sheriff Darr"), in their individual and official capacities, and against Adams County for municipal liability (collectively, "Defendants"). [#1]. The gravamen of Plaintiffs' Complaint consists of two sets of incidents alleged to have occurred early in the morning of April 6, 2014—referred to in the Complaint as the "3:30 a.m. Incidents" and the "4:45 a.m. Incidents." [*Id.* at ¶¶ 55, 81]. The Complaint alleges that Defendants' activities during the 3:30 a.m. and 4:45 a.m. Incidents included several discrete instances of unlawful searches and seizures, and uses of excessive force, in violation of the Fourth and Eight Amendments to the Constitution. The following is a summary and recitation of the allegations contained in Plaintiffs' Complaint, which are presumed to be true for the purposes of the pending Partial Motion to Dismiss.

### I.     The 3:30 a.m. Incidents

At approximately 3:30 a.m. in the morning on April 6, 2013, the Adams County Sheriff's Department Office ("ACSO") responded to a 911 call made by Plaintiffs' neighbors under false pretenses, claiming that Mr. Hulse was firing a gun into a neighbor's yard. [#1, ¶¶ 22, 27]. The officers awakened Ms. McCain and entered the residence despite Ms. McCain's claim that she had no idea what the officers might be referring to in asking whether anyone had been shooting in her yard, and despite Ms. McCain's refusal to provide permission for the officers to search the residence. [*Id*. ¶¶ 26-30].

---

[1] The nine other officers named in the Complaint include officers Michel Miller, Christopher Gruenberger, David Lehrke, Jeffrey Stovall, Jai Rogers, Derek Dummar, Paul Siska, Dillon Lussier, and Scott Miller. Officer Scott Miller was subsequently voluntarily dismissed from the litigation without prejudice upon Plaintiffs' motion. [#9, #10].

Soon after the ACSO officers entered the residence, Mr. Hulse was awakened by a gun to the back of his head. [*Id.* at ¶ 38]. The officers also "aggressively and very roughly pulled Ms. McCain from the interior threshold of her front door to the middle of her front yard." [*Id.* at ¶ 45]. An officer then kneed Ms. McCain in the back while or immediately before Ms. McCain was handcuffed. [*Id.*] Ms. McCain's bathrobe became undone during the struggle, and she subsequently "soil[ed]" herself. [*Id.* at ¶¶ 46, 48]. As a result of Defendants' excessive use of force, Ms. McCain "sustained significant physical and other injuries, including, but not limited to, deep bruises on her back, left shoulder, and hand, and ongoing, severe neck and back pain and limited range of motion in her left shoulder, in addition to significant emotional and mental pain, stress, humiliation, and loss of dignity and privacy." [*Id.* at ¶ 50]. The officers then left Plaintiffs' residence at approximately 4:15 a.m., without having arrested anyone at that time. [*Id.* at ¶ 54].

**II.   The 4:45 a.m. Incidents**

At approximately 4:45 a.m., allegedly as a result of another false report by neighbors that Mr. Hulse had recently caused a verbal disturbance outside his home, Mr. Hulse and Ms. McCain heard tapping on the windows of their residence while conversing in the kitchen. [#1 at ¶¶ 56, 69]. Ms. McCain observed a man in the driveway with a firearm. [*Id.* at ¶ 57]. Mr. Hulse then "logically perceived [them] to be dangerous criminals," and retrieved his own firearm in response to the apparent imminent danger. [*Id.* at ¶¶ 61-68]. During a brief standoff, Mr. Hulse inquired of an officer who had drawn his weapon upon Mr. Hulse "'Are you the police?'" [*Id.* ¶ 62]. The officer identified himself as a police officer, whereupon Mr. Hulse "deposited his weapon in his bedroom." [*Id.* at ¶¶ 62-68].

When Mr. Hulse returned from the bedroom to the front door of the residence, he was violently jerked out of his house by an officer; thereafter, ACSO officers "repeatedly punched Mr. Hulse in the torso and slammed his body to the ground, cracking his ribs, injuring his neck and shoulder, and causing several deep bruises (among other physical and non-physical injuries)." [*Id.* at ¶¶ 71-72]. Mr. Hulse was then arrested and handcuffed, and when escorted to the patrol car, Defendant Lehrke "smashed Mr. Hulse's head into the car several times . . . resulting in significant injuries, including a broken front tooth." [*Id.* at ¶ 73]. As Mr. Hulse was beaten and arrested by Defendants Lehrke and Rogers, other ASCO officers re-entered Plaintiffs' residence with guns drawn, and ordered Ms. Hulse and T.H. to remain in the rooms where they were respectively found. [*Id.* at ¶¶ 77-78]. Plaintiffs Mr. Hulse and Ms. McCain were not advised of their Miranda rights when arrested and questioned by ACSO officers, and Mr. Hulse was refused treatment for his injuries when taken to jail early in the morning immediately subsequent to the 3:30 a.m. and 4:45 a.m. Incidents. [*Id.* at ¶¶ 77-78, 80].

## III. Averments in Complaint Sounding in Municipal and/or "Official Capacity" Liability

Plaintiffs allege that "Defendant Adams County and Defendant Darr failed to properly hire, train, supervise and/or discipline its employees regarding the proper basis for engaging in a search of a residence or vehicle, which contributed to the improper and unwanted searches of Plaintiffs' home and Mr. Hulse's vehicle." [#1 at ¶ 101]. These purported failures are said to have arisen from a "conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Adams County and Defendant Darr," and are asserted to have been the "moving force behind and proximate cause of Defendants' unreasonable search of Plaintiffs' home and Mr. Hulse's vehicle." [*Id.* at ¶¶ 102, 104]. Similarly, with respect to Plaintiffs' excessive force allegations, Plaintiffs assert that "Defendant Adams County and

4

Defendant Darr failed to properly hire, train, supervise, and/or discipline its ACSO employees regarding the proper use of physical restraint and force, resulting in Mr. Hulse's and McCain's unlawful seizures," as a result of a "conscious or deliberate choice" amongst alternatives, "proximate[ly] caus[ing] []Defendants' unreasonable seizures of Mr. Hulse and Ms. McCain." [*Id.* at ¶¶ 118-19, 21]. Plaintiffs also allege that Adams Count and Sheriff Darr declined to discipline any of the deputies involved in the 3:30 and 4:45 a.m. Incidents. [*Id.* ¶¶ 89, 101, 118]. Finding these allegations to be insufficient, Defendants have moved for a partial dismissal of the Complaint.

## ANALYSIS

### I. Defendants' Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants seek to dismiss Plaintiffs' claims against: (1) each individual Defendant in his official capacity, (2) Sheriff Darr in his individual and official capacities, and (3) the municipal liability claims as to Adams County. [#12]. In opposition, Plaintiffs contend that they have "more than adequately pled" the necessary predicates to official capacity and/or municipal liability under 42 U.S.C. § 1983. [#22, at 7]. I respectfully disagree. Having analyzed Plaintiffs' allegations in light of the applicable substantive law and with respect to the applicable pleading burdens, I respectfully find that Plaintiffs have failed to state a cognizable claim for each of these types of claims.

#### A. Standard of Review

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court must "accept as true all well pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting

5

*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*).

Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*). As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombley*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

    **B.**    **Application to Plaintiffs' Claims**

        **1.  Official Capacity**

As an initial matter, the court briefly considers Plaintiffs' allegations of violations of 42 U.S.C. § 1983 against each Defendant in his official capacity, including Sheriff Darr. Defendants argue, and Plaintiffs implicitly concede, that by asserting claims against the individual officers in their official capacities, Plaintiffs are effectively asserting claims against the government entity that employs them. [#12, at 6; #22, at 7 n.2]. Therefore, the standard

applied, and the analysis that follows, focuses on whether Plaintiffs can prevail on a municipal liability claim. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

### 2. Municipal Liability

Plaintiffs acknowledge that to ultimately prevail on a municipal liability claim, they must establish (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. [#22, at 8] (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998)). Plaintiffs are correct that there are a number of different forms a cognizable "municipal policy or custom" could take, including decisions of employees with final policymaking authority, or failures to adequately train or supervise. [#22, at 8] (citing *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). Plaintiffs do not assert that any of the individual Defendants, other than Sheriff Darr, had any final policymaking authority.[2] [#1]. Rather, Plaintiffs advance two primary theories for municipal liability resulting from the alleged constitutional violations: (1) the failure to properly hire, train, supervise, and/or discipline, and/or (2) the existence of a policy, procedure, custom and/or practice. *See e.g.*, [*id.* at ¶¶ 101, 118].

In contrast to their vivid and precise factual allegations regarding the 3:30 a.m. and 4:45 a.m. Incidents, Plaintiffs' averments supporting its theories of municipal liability under § 1983 are almost entirely comprised of legal conclusions, rather than statements of fact. For example, the Complaint verbatim alleges as follows:

- Upon information and belief, Defendant Adams County and Defendant Darr has failed to properly hire, train, supervise, and/or discipline any of its subordinate employees and agents who participated in the aforementioned events of April 6,

---

[2] While Plaintiffs allege that Defendant Miller was a supervisor on-the-scene of the 3:30 a.m. and 4:45 a.m. Incidents, they do not allege that Defendant Miller is a final policy maker who could bind the municipality for purposes of § 1983 liability. In addition, for the purposes of resolving this motion, the court assumes that Sheriff Darr is a final policy maker.

> 2013, despite the obvious need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions, and the fact that its current custom, policies, or practices with respect to hiring, training, supervision, and/or discipline are clearly likely to result in a violation of constitutional rights. [#1 at ¶ 89].
>
> - Defendant Adams County and Defendant Darr failed to properly hire, train, supervise and/or discipline its employees regarding the proper basis for engaging in a search of a residence or vehicle, which contributed to the improper and unwanted searches of Plaintiffs' home and Mr. Hulse's vehicle. [*Id.* at ¶ 101].
>
> - This inadequate hiring, training, supervision, and or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Adams County and Defendant Darr. [*Id.* at ¶ 102].
>
> - In light of the duties and responsibilities of Defendant Adams County personnel – who must make decisions regarding when Fourth Amendment searches are appropriate – the need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate hiring, training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Adams County is liable for its failure to properly hire, train, supervise, and/or discipline its subordinate employees and agents. [*Id.* at ¶ 103].
>
> - Such failure to properly hire, train and supervise was the moving force behind and proximate cause of Defendants' unreasonable search of Plaintiffs' home and Mr. Hulse's vehicle, and constitutes an unconstitutional policy, procedure, custom and/or practice. [*Id.* at ¶ 104].[3]

Plaintiffs do not identify or describe an express policy or specific custom. Similarly, Plaintiffs do not identify policies, practices, or training programs that should have been in place, but were not. While the court is mindful that a plaintiff, as an outsider to a municipal government, may not have extensive information about a city's official policies, practices, or training programs at the pleading stage, there must be at least <u>some</u> additional factual allegations beyond just restating the legal elements of the claim to state a cognizable claim. Otherwise, any complaint that

---

[3] These recitations of Plaintiffs' theories of municipal and official capacity liability are repeated in substantively identical form with respect to the Complaints' unlawful seizure and excessive force allegations. [*Id.* ¶¶ 107-123].

articulated a factual basis for a constitutional violation would be immune from dismissal simply by further pleading of the legal standards.

In the absence of an express policy or an entrenched custom, the inadequacy of police training may serve as a basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the constitutional rights of people with whom the police come in contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference may be shown when the municipality has actual or constructive notice that its actions or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (citations omitted). On this front, Plaintiffs do allege that Sheriff Darr and Adams County "repeatedly chose (and still choose[]) not to discipline any of the many ASCO officers who illegally raided Plaintiffs' home during the middle of the night not once but twice, and who also assaulted multiple individuals in the home." [#1, at ¶ 89; #22, at 9]. But as pled, Sheriff Darr's actions post-date the alleged misconduct said to have caused Plaintiffs injuries. They do not show that the municipality (through Sheriff Darr or otherwise) had actual or constructive notice that its actions or failure to act would result in constitutional deprivation, and in the same vein, could not have been the "moving force" behind the deprivations alleged. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). The facts as pled do not demonstrate any other incidents involving members of the Adams County Sheriff's Department to which the municipality had either constructive or actual notice or a pattern of similar constitutional violations by untrained police. Nor does the Complaint allege that Sheriff Darr knew of the 3:30 a.m. Incident prior to the 4:45 a.m. Incident so that he could and should have interceded.

Simply put, these allegations have insufficient factual content necessary to support a plausible inference for either prong of the standard for municipal liability, *i.e.*, a specific municipal policy or custom that resulted in constitutional deprivations, or the existence of a direct causal link between the policy or custom and the injury alleged. *See Rodriguez v. Chavez*, 2014 WL 4627274, * 4 (D. Colo. Sept. 16, 2014) (J. Brimmer) (*citing Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010)). And without more, the court does not find that the "incidents" complained of themselves, even when considered in combination with the purported subsequent refusals to discipline, allow for a plausible inference that any "municipal policy or custom" was a "moving force" behind the alleged deprivations at issue. *See Chambers v. Cooper*, 2014 WL 561371 (D. Colo. Feb. 12, 2014) (J. Blackburn) (holding that "[m]erely parroting the language of the relevant standard…is not sufficient to withstand a motion to dismiss").

### 3. Sheriff Darr's Individual Liability

Similarly, because the Complaint is devoid of any allegation suggesting that Sheriff Darr himself personally participated in the alleged deprivations suffered by Plaintiffs, I respectfully recommend that the Complaints' claims against Sherriff Darr in his personal capacity be dismissed without prejudice.

### 4. Adams County, Colorado as Defendant

Defendants also seek to dismiss Adams County, Colorado as an improperly named defendant. [#12, 5-6]. Because the court finds that Plaintiffs have failed to state a cognizable claim for municipal liability, Adams County, Colorado should be dismissed as a party. Moreover, in view of the guidance of this circuit in *Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005), I find that "Adams County" has not yet been properly named as a

Defendants in this action, and recommend that the claims asserted against the County be dismissed on that additional ground as well.

## CONCLUSION

Consistent with the reasons set forth herein, I respectfully RECOMMEND that:

(1) Defendants' Motion to Dismiss [#12] be GRANTED, and Plaintiffs' municipal liability and official capacity claims as to all Defendants, and all claims as to Defendant Sheriff Darr be DISMISSED, without prejudice.[4]

DATED: March 30, 2015

BY THE COURT:

/s/ Nina Y. Wang_____
United States Magistrate Judge

---

[4] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).